UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
R. Alexander Acosta, SECRETARY OF LABOR,  \*
United States Department of Labor,  \*
  \*
     Plaintiff,  \*
  \*  CIVIL ACTION NO.
   v.  \*
  \*
BRIDGEPORT HEALTH CARE CENTER, INC.  \*
and CHAIM STERN, Individually,  \*
  \*
     Defendants.  \*
  \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiff, Secretary of Labor, United States Department of Labor (the "Secretary"),

hereby alleges:

1. This action arises under the Employee Retirement Income Security Act of 1974

("ERISA" or the "Act"), 29 U.S.C. § 1001 et seq., as amended.  The Secretary brings this action

pursuant to ERISA §§ 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2) and (5), to enforce the

provisions of Title I of ERISA, obtain appropriate relief in order to redress violations, and enjoin

acts and practices that violate the provisions of that Title.

## I. JURISDICTION AND VENUE

2. Jurisdiction is established pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1),

and 28 U.S.C. § 1331.

3. Venue in this judicial district is established pursuant to ERISA § 502(e)(2), 29

U.S.C. § 1132(e)(2).  Defendants Bridgeport Health Care Center, Inc. ("Bridgeport Health") and

Chaim Stern ("Stern") have a regular place of business and transact substantial business on an ongoing basis in this judicial district.

## II.    DEFENDANTS

4.    Bridgeport Health is and has been, at all relevant times from September 23, 2014 to the present (the "pertinent period"), an employer within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5).

5.    During the pertinent period, Bridgeport Health is and has been a corporation with an office and place of business at 600 Bond Street, Bridgeport, Connecticut 06610.

6.    During the pertinent period, Bridgeport Health is and has been the operating entity of Bridgeport Health Care Center and Bridgeport Manor, two nursing homes on the same property in Bridgeport, Connecticut.

7.    During the pertinent period, Stern is and has been the Chief Financial Officer of Bridgeport Health, Chief Operating Officer of Bridgeport Health, and Nursing Home Administrator of Bridgeport Health.

8.    During the pertinent period, Bridgeport Health sponsored the Bridgeport Health Care Center, Inc. Benefit Plan (the "Plan"), a self-funded employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), which is subject to coverage under the Act pursuant to ERISA § 4(a), 29 U.S.C. § 1003(a).

9.    Bridgeport Health sponsored the Plan pursuant to collective bargaining agreements with Local 1522 of Council 4 of the American Federation of State County and Municipal Employees ("AFSCME") and Local 1199 of the Service Employees International Union ("SEIU").

10.     The Plan was designed to provide health benefits for the exclusive benefit of its participants, employees of Bridgeport Health, and their beneficiaries.  Such health benefits included, medical, dental, vision, and prescription coverage.  Employer contributions and amounts withheld from employee paychecks as contributions fund the Plan.

11.     During the pertinent period, Bridgeport Health is and has been the Plan Sponsor of the Plan, as defined by ERISA § 3(16)(B)(i), 29 U.S.C. § 1002(16)(B)(i), the named Plan Administrator under ERISA § 3(16)(A)(i), 29 U.S.C. § 1002(16)(A)(i), and the named fiduciary of the Plan.

12.     During the pertinent period, Bridgeport Health, as Plan Administrator of the Plan and named fiduciary of the Plan, exercised discretionary authority or discretionary control respecting the management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and had discretionary authority or discretionary responsibility in the administration of the Plan.  Therefore, Bridgeport Health is and has been, during the pertinent period, a fiduciary to the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

13.     During the pertinent period, Bridgeport Health, as a fiduciary of the Plan and employer of employees covered by the Plan, is and has been a party-in-interest within the meaning of ERISA §§ 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A) and (C).

14.     During the pertinent period, Stern has acted on behalf of Bridgeport Health as the Plan Administrator of the Plan.  Stern makes all financial decisions for Bridgeport Health and for the Plan.  Sterns decides whether and when to fund Bridgeport Health's health reimbursement account from which health claim checks are paid.  Stern authorizes money transfers from Bridgeport Health's general assets to fund the health reimbursement account to pay health

claims.  Stern has also signed contracts and agreements for the Plan on behalf of Bridgeport Health.  Stern is also responsible for the dissemination of information regarding Plan coverage. As such, Stern exercised discretionary authority or discretionary control respecting the management of the Plan, exercised authority or control respecting the management or disposition of the Plan's assets, and had discretionary authority or discretionary responsibility in the administration of the Plan.  Therefore, Stern is and has been, during the pertinent period, a fiduciary with respect to the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

15.     During the pertinent period, Stern, as a fiduciary of the Plan, Chief Financial Officer of Bridgeport Health, Chief Operating Officer of Bridgeport Health, and Nursing Home Administrator of Bridgeport Health, is and has been a party-in-interest with respect to the Plan within the meaning of ERISA §§ 3(14)(A) and (H), 29 U.S.C. §§ 1002(14)(A) and (H).

### III.     DEFENDANTS VIOLATED ERISA

16.     During the pertinent period, Defendants were responsible for receiving and collecting any and all monies due under the Plan to fund health claims and for properly managing the assets of the Plan.  Defendants were responsible for remitting any and all employee contributions due under the Plan to fund health claims.  Defendants were also responsible for undertaking measures to collect any and all employer contributions due under the Plan to fund health claims.

17.     During the pertinent period, Bridgeport Health was obligated to remit employer contributions due under the Plan to fund health claims.  Defendants failed to take appropriate measures to collect any and all employer contributions due under the Plan to fund health claims.

18.     From October 1, 2010 to May 31, 2015, United Medical Resources ("UMR") served as third-party administrator ("TPA").  After processing health claims, UMR issued checks on behalf of Bridgeport Health to service providers to pay health claims.  Such checks were drawn from Bridgeport Health's health reimbursement account, which Bridgeport Health was responsible for funding.  Bridgeport Health failed to fund the health claim reimbursement account as required.  As a result, checks for health claims were returned for insufficient funds and claims remained unpaid.  UMR resigned from being the TPA and ceased processing health claims because of Defendants' frequent failure to fund the health reimbursement account.  Such unprocessed health claims remained unpaid.

19.     Upon information and belief, during a period of transition from UMR to Meritain Health, Inc. ("Meritain") in 2015, Defendants issued a memorandum to employees assuring them of health insurance coverage.  Defendants conveyed to employees that there was a transition problem when they knew that there were failures to fund health claims.

20.     From June 1, 2015 to August 5, 2016, Meritain served as TPA.  After processing health claims, Meritain issued checks on behalf of Bridgeport Health to service providers to pay health claims.  Such checks were drawn from Bridgeport Health's health reimbursement account, which Bridgeport Health was responsible for funding.  Bridgeport Health failed to fund the health claim reimbursement account as required.  As a result, checks for health claims were returned for insufficient funds and claims remained unpaid.  Meritain resigned from being the TPA and ceased processing health claims because of Defendants' frequent failure to fund the health reimbursement account.  Such unprocessed health claims remained unpaid.

21.     During the pertinent period, Defendants represented to participants that they had health insurance coverage by continuing to withhold monies every pay period from employees' paychecks as employee contributions to the Plan.

22.     During the pertinent period, Defendants did not inform participants that their claims may not be paid or processed.

23.     During the pertinent period, Bridgeport Health personnel collected unpaid claims from participants and reassured participants that the claims would be paid.

24.     In reliance upon Defendants' misrepresentations and as a result of Defendants' omission to inform employees that claims may not be paid, Plan participants and beneficiaries continued to seek and obtain health care services that were covered under the Plan and that they reasonably believed would be paid by the Plan.  Had the participants known that their bills would not be paid, they might have delayed seeking care and/or sought coverage from other sources. Because of this reliance on the Defendants' misrepresentations and material omission, participants and beneficiaries experienced a detriment in that they incurred costs of the health services which they received.

25.     Based on information provided by the TPAs, approximately $1,117,391.34 in health claims remained outstanding with UMR as of September 2016 and approximately $381,930.94 in health claims remained outstanding with Meritain as of October 2016.

26.     Defendants failed to secure a bond in connection with the Plan.

27.     Defendants failed to file a Form 5500 Annual Return/Report of Employee Benefit Plan for Plan years 2009 to the present.

### IV.    CLAIMS PURSUANT TO ERISA § 404

28.    These claims incorporate the allegations in paragraphs 1-27.

29.    By virtue of the acts described in paragraphs 16 through 25, Defendants failed to discharge their fiduciary duties with respect to the Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries, in violation of  ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

30.    By virtue of the acts described in paragraphs 16 through 25, Defendants failed to discharge their fiduciary duties in regard to the Plan with the requisite degree of care, skill, prudence, and diligence, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

### V.    CLAIMS FOR EQUITABLE RELIEF

31.    These claims incorporate the allegations in paragraphs 1-30.

32.    By virtue of the acts described in paragraphs 16 through 25, Defendants violated ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), in that they misrepresented to participants that they had health care coverage and failed to inform participants of the substantial risk their health claims would not be paid.  Defendants knew or should have known that such misrepresentations and omission would induce continued reliance on health benefits in the absence of information that these benefits were in jeopardy.  Plan participants suffered harm, in that they incurred the costs of unpaid/unprocessed health claims.  Plan participants incurred such costs as a result of Defendants' representations of continued health coverage, thus demonstrating causation.  A remedy of surcharge is warranted, given that the fiduciary breach resulted in harm to Plan participants.

33.    In the alternative to paragraph 32, the Secretary alleges that Defendants' misrepresentations and omission create a viable claim under equitable estoppel.  As a result of

Defendants' misrepresentations and failure to inform participants that their health claims may not be paid, participants continued to seek health treatment. If Plan participants had known that their claims would not be paid, they might have delayed seeking care and/or sought coverage from other sources. Because of this reliance on Defendants' misrepresentations and material omission, Plan participants experienced a detriment in that they incurred the costs of unpaid/unprocessed health claims. A remedy of equitable estoppel is thus appropriate.

## VI. REPORTING AND BONDING CLAIMS

34. These claims incorporate the allegations in paragraphs 1-33.

35. By virtue of their failure to secure a bond, as described in paragraph 26, Defendants violated ERISA § 412(b), 29 U.S.C. § 1112(b).

36. By virtue of their failure to file a Form 5500 Annual Return/Report of Employee Benefit Plan for Plan years 2009 to the present, as described in paragraph 27, Defendants violated ERISA § 101(b)(1), 29 U.S.C. § 1021(b)(1).

## VII. PRAYER FOR RELIEF

WHEREFORE, the Secretary prays that this Court enter an order:

37. Permanently enjoining Defendants from violating or participating in any violation of ERISA, including specifically §§ 101, 404, and 412, 29 U.S.C. §§ 1021, 1104, and 1112;

38. Permanently enjoining Stern from serving as a fiduciary to any ERISA-covered plan in the future;

39. Requiring Defendants to restore to the Plan any and all losses incurred as a result of breaches of Defendants' fiduciary duties and the violations they committed or for which they are liable, including lost earnings and appropriate interest;

40.     Requiring Defendants to compensate Plan participants for any health expenses incurred as a result of Defendants' misrepresentations and omission, plus any related penalties or accrued interest.

41.     Appointing an Independent Fiduciary, if necessary, to administer the Plan;

42.     Awarding the Secretary the costs of this action; and,

43.     Providing such other relief as is just and equitable.


Respectfully submitted,

Kate S. O'Scannlain
Solicitor of Labor

Michael D. Felsen
Regional Solicitor

*/s/Celeste C. Moran*
Celeste C. Moran (MA BBO No. 682937)
Senior Trial Attorney
moran.celeste@dol.gov

Nathan C. Henderson (MA BBO No. 657763)
Senior Trial Attorney
henderson.nathan.c@dol.gov

United States Department of Labor
Attorneys for Plaintiff

U.S. Department of Labor
Office of the Solicitor
JFK Federal Building, Room E-375
Boston, Massachusetts  02203

Telephone: (617) 565-2500
Facsimile: (617) 565-2142

Date: February 1, 2018